**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|                                         |                                |
|-----------------------------------------|--------------------------------|
| MARISSA GONZALEZ,                       | Civil Action No.: 17-cv-3691   |
|     Plaintiff,      |                                |
|   v.                          | **OPINION**                    |
| COMMISSIONER OF SOCIAL SECURITY,        |                                |
|     Defendant.      |                                |

**CECCHI, District Judge.**

## I.    INTRODUCTION

Before the Court is Plaintiff Marissa Gonzalez's appeal seeking review of a partially favorable final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") regarding her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is vacated and the case is remanded for further administrative proceedings.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff, an adult woman, was born on April 24, 1985. (Tr.[1] at 66). Plaintiff is a high school graduate, (*id.* at 67), and has previously worked as a cosmetics manager at a retail store.

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 6).

(*Id.*). However, Plaintiff was terminated from her previous position in 2009 and has not worked since. (*Id.*). Plaintiff, who is a male-to-female transgender person, believes that her transgender status led to her firing. *See* (*id.* at 69, 73). After her firing, Plaintiff had a difficult time finding a new job. Plaintiff has testified that, while looking for work, she felt that prospective employers did not want to hire her because of her transition. (*Id.* at 74). Since her firing, Plaintiff has suffered from depression and comorbid psychological impairments; Plaintiff has testified that she cries every day and is insomniac to the point of being unable to sleep until five, six, or even seven o'clock in the morning. (*Id.* 79-81). Plaintiff, who lives with her mother, has further testified that she is unable to leave her home unaccompanied because whenever she goes out into public she is afraid that people are judging and ridiculing her; she further stated that she sometimes feels unsafe in public when her mother is not present. (*Id.* at 83). Plaintiff has also testified that she is unable to use public transportation, (*id.* at 84), that being around many people makes her feel anxious, (*id.* at 88), and that she nearly left a hearing before the ALJ prematurely because she felt too nervous to continue. (*Id.*).

### B.    Procedural Background

On October 17, 2013, Plaintiff filed an application for a period of disability and DIB pursuant to Title II of the SSA. (*Id.* at 217). That same day, Plaintiff also applied for SSI pursuant to Title XVI of the SSA. (*Id.* at 219). On January 27, 2014, Plaintiff's applications were initially denied. (*Id.* at 105-06). On May 23, 2014, Plaintiff's applications were once again denied on reconsideration. (*Id.* at 125). Plaintiff requested an ALJ hearing, and an initial hearing was conducted on February 12, 2016. (*Id.* at 55-90). Additionally, a supplemental hearing before the ALJ was conducted on June 3, 2016. (*Id.* at 38-54). On June 28, 2016, the ALJ issued his opinion concluding that Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the

SSA as of her last date insured, March 31, 2012, and further concluding that Plaintiff was disabled from February 12, 2016 through the date of the opinion. (*Id.* at 21-33). On August 24, 2016, Plaintiff sought review by the Appeals Council. (*Id.* at 15). On March 20, 2017, the Appeals Council denied review. (*Id.* at 1). The Court is informed that Plaintiff has obtained SSI benefits beginning February 12, 2016, the date from which the ALJ found her to be disabled. (ECF No. 8). Nevertheless, Plaintiff instituted this action seeking review of the ALJ decision.

## III.    LEGAL STANDARD

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have

3

come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

**B.    Determining Disability**

In order to be eligible for benefits under the SSA, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.    Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV.    DISCUSSION

### A.    Summary of the ALJ decision.

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through March 31, 2012, and had not engaged in substantial gainful activity since Plaintiff's alleged onset date (also March 31, 2012). (Tr. at 23). As step two, the ALJ found that Plaintiff suffered from two severe impairments: personality disorder and depression. (*Id.*) However, at

step three, the ALJ found that Plaintiff's impairments were not, either individually or in combination, the medical equivalent of any of the listed impairments. (*Id.* at 24). The ALJ then concluded that, prior to February 12, 2016, Plaintiff possessed the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: she could understand, remember, and carry out simple instructions; she could have occasional interaction with co-workers, supervisors, and the general public; she could handle changes to essential job functions on an occasional basis. (*Id.* at 24-27). The ALJ further concluded that, beginning on February 12, 2016, Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: she could understand, remember, and carry out simple instructions; she could have only incidental interaction with supervisors and co-workers, and occasional interaction with the general public; she could not respond appropriately to usual work situations or to changes in a routine work setting. (*Id.* at 28-29). At step four, the ALJ found that since March 31, 2012, Plaintiff has been unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ found that, prior to February 12, 2016, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. (*Id.*). The ALJ further found that beginning on February 12, 2016, in light of Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that she could perform. (*Id.* at 32). The ALJ thus concluded that Plaintiff was not disabled prior to February 12, 2016, but became disabled on that date and continued to be disabled through the date of the decision. (*Id.*). The ALJ further concluded that the claimant was not under a disability within the meaning of the SSA prior to her date last ensured. (*Id.*).

**B.    Analysis**

**1.    Medical Evidence before the ALJ**

On April 11, 2012, Plaintiff was examined by Richie Tran, MD.  On that occasion, Dr. Tran noted that Plaintiff had previously been diagnosed with various medical conditions, including allergies and dyslipidemia. (Tr. at 310).  Dr. Tran further indicated that Plaintiff was a transsexual woman, that he had administered sex reassignment therapies, and that Plaintiff was prepared to transition from male to female.  (*Id.* at 311).  Dr. Tran also documented that, at the time of the examination, Plaintiff had "no complaints" regarding her hormone therapy treatments.  (*Id.* at 308).  Plaintiff returned to Dr. Tran several times in the following months.  On August 14, 2012, Dr. Tran noted that other than a bleeding incident, Plaintiff's review of systems was within normal limits.  (*Id.* at 315).

On August 29, 2012, Plaintiff was examined by Ernesto Perdomo, PhD.  (*Id.* at 299-301).  Plaintiff complained of depression, mood swings, fatigue, and social withdrawal.  (*Id.* at 299).  Dr. Perdomo noted that although Plaintiff reported spending most of her time in bed, she was able to engage in self-care activities and sometimes assisted her mother.  (*Id.* at 300).  Dr. Perdomo also indicated that Plaintiff had friends, socialized occasionally, and was able to use public transportation if necessary.  (*Id.*).  The examination further revealed that Plaintiff was oriented to time and place, exhibited an organized and focused thought process, and did not experience hallucinations or delusions.  (*Id.*).  Plaintiff's short-term memory was found to be fair, her long term memory was fair to good, her concentration was good, and her intelligence appeared to be within the average range.  (*Id.*).  Dr. Perdomo concluded that Plaintiff was experiencing moderate to severe depression and that such condition "may" have been affecting her ability to function in a work environment.  (*Id.* at 301).

7

Following her initial hearing before the ALJ, Plaintiff returned to Dr. Perdomo for another assessment on May 9, 2016. (*Id.* at 367-69). Plaintiff once again complained of depressed mood, fatigue, lack of motivation, and social withdrawal. (*Id.* at 367). Dr. Perdomo noted at this examination that Plaintiff had no friends, did not ever socialize, and rarely left her home because of fear. (*Id.* at 368). Plaintiff indicated that she sometimes experienced auditory hallucinations. (*Id.*). The examination further revealed that Plaintiff's short-term memory was mildly impaired, her long term memory and concentration were fair, and her intelligence appeared to be in the "very low average range." (*Id.*). Dr. Perdomo concluded that Plaintiff suffered from severe major depression and personality disorder with avoidant characteristics; he opined that Plaintiff's condition was such that it would "affect her ability to function effectively in the social spheres of life." (*Id.* at 369).

### 2.    The ALJ's Conclusion as to Plaintiff's Onset Date

Plaintiff challenges the ALJ's determination that she was not disabled prior to February 12, 2016. Specifically, Plaintiff argues that the ALJ was required by Social Security Ruling ("SSR") 83-20 to obtain and consider an expert opinion from a medical advisor regarding the date on which Plaintiff became disabled.[2] (ECF No. 13 at 24-29).

The ALJ below found that Plaintiff's condition caused her to become disabled on February 12, 2016. (*Id.* at 32). Although Plaintiff alleged an earlier onset date of March 31, 2012, the ALJ determined that such allegation was not credible because it conflicted with the clinical findings of Dr. Perdomo's August 29, 2012 examination. (Tr. at 27). The ALJ noted that, on February 12,

---

[2] SSR 83-20, which stated the Commissioner's policy with regard to establishing the onset date of a claimant's disability, was rescinded and replaced by the Commissioner in SSR 18-01p on October 2, 2018. However, as Defendant notes, SSR 83-20 was in effect at the time the ALJ rendered the decision now before the Court.

2016, Plaintiff testified that she was not able to leave her home alone. (*Id.* at 29). The ALJ further noted that Plaintiff's claims were later corroborated by reports and notes prepared by Dr. Perdomo after the May 2016 examination. (*Id.*). On the basis of this evidence, the ALJ concluded that "the clinical evidence of record shows that the claimant's signs and symptoms worsened as of February 12, 2016." (*Id.*).

The evidence, however, does not support the conclusion that Plaintiff's condition became disabling only on February 12, 2016. Dr. Perdomo's May 9, 2016 medical source statement, relied upon by the ALJ for his inference of a February 12, 2016 onset date, in fact indicates that Dr. Perdomo declined to opine about when Plaintiff's limitations were first present. (*Id.* at 365). Moreover, Plaintiff's February 12, 2016 testimony before the ALJ appears to the Court to describe her symptoms as she had experienced them during the period prior to her hearing and not a set of new experiences that began or worsened on that day. For example, Plaintiff testified that she had been on an irregular sleeping schedule for approximately "the past nine months." (*Id.* at 81). Additionally, in finding that Plaintiff was disabled, the ALJ attributed particular importance to the fact that Plaintiff testified she was fearful of leaving the house without her mother and experienced thoughts of people judging and looking at her. (*Id.* at 29). Nothing in Plaintiff's testimony, however, indicates that such symptoms began or worsened on or around February 12, 2016.

ALJs are always obliged to select an onset date that is supported by substantial evidence of record. Although an ALJ may sometimes infer an onset date different from a claimant's alleged date,[3] it is crucial that such inference be based on medical evidence. *See Buckley v. Comm'r of*

---

[3] The Court notes, however, that where the medical evidence of record is not sufficient to reach such an inference, an ALJ may be required to seek out the opinion of a medical advisor. *See Walton v. Halter*, 243 F.3d 703, 709 (3d. Cir. 2001) (holding that where claimant alleged a slowly-progressing disability with an onset date decades in the past and there was a lack of contemporaneous medical records, the ALJ was required to "call upon the services of a medical

*Soc. Sec.*, No. 09-4275, 2010 WL 3515584, at *15 (D.N.J. Aug. 31, 2010) ("The Third Circuit's past interpretation of SSR 83-20 makes clear that the existence of medical evidence, whether contemporaneous or non-contemporaneous, that substantially supports the ALJ's onset date inference is essential."). Since no evidence in the record here specifically supports an onset date of February 12, 2016 and not prior, the Court cannot find that the ALJ's determination of Plaintiff's onset date is supported by substantial evidence.

Accordingly, the Court will remand to the ALJ for further consideration of Plaintiff's onset date. On remand, the ALJ should determine if sufficient medical evidence exists currently from which an onset date can be inferred, or if the testimony of a medical expert is required. The ALJ should then take the appropriate steps to determine Plaintiff's onset date on the basis of substantial evidence.

### 3. Plaintiff's Other Arguments

Plaintiff makes other arguments as to why the ALJ's decision should be remanded. Because the Court finds that the ALJ's opinion was not supported by substantial evidence, it will remand and need not consider such arguments at this juncture.

## V.    CONCLUSION

For the foregoing reasons, the Court will vacate the ALJ's decision and remand this case for further administrative proceedings consistent with this Opinion. An appropriate Order follows.

---

advisor rather than rely on his own lay analysis of the evidence."); *Buckley v. Comm'r of Soc. Sec.*, No. 09-4275, 2010 WL 3515584, at *15 (D.N.J. Aug. 31, 2010) (holding that SSR 83-20 required the ALJ to call upon a medical advisor where plaintiff suffered from a slowly-progressing disease and medical records from the relevant time period were not available, despite that such time period was of relatively short duration). Although the Court need not decide whether, in the instant case, the circumstances are such that the ALJ was required to consult a medical expert, on remand the ALJ should take care to consider whether he possesses sufficient medical records from which to infer an onset date that is supported by substantial evidence, or whether he requires the assistance of a medical advisor.

DATED: Jang 31, 2019

_____
CLAIRE C. CECCHI, U.S.D.J.